IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ARTHUR HIRSCH,      )
     )
    Plaintiff,      )
     )
v.      )      CA NO. 2:10-cv-00134-HGD
     )
WILLIAM G. MATHEWS, et al.,      )
     )
    Defendants.      )

BRIEF IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS TRACY LUNA AND TERRY JOHNSON

A.      Introduction

This action was commenced on January 22, 2010 by the filing of a complaint in the United States District Court for the Northern District of Alabama by plaintiff Arthur Hirsch. The matters at issue in this case arise out of Hirsch's arrest on July 26, 2009 and subsequent prosecution in the Municipal Court for the Town of Ardmore, Alabama.

Hirsch has sued numerous defendants, including the Town Prosecutor, the municipal court judge, the two police officers involved in his arrest, the police chief, two jailers, the Clerk/Magistrate of the Town of Ardmore and the Mayor and members of the Town Council of the Town of Ardmore. He has also sued the towing company that towed his vehicle from the scene of his arrest after he was taken to jail.

Plaintiff's federal claims are asserted under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").[1]

Defendants Tracy Luna and Terry Johnson — the officers who are alleged to have effected Hirsch's custodial arrest — have filed a motions to dismiss all claims alleged in the complaint with the exception of the claims brought under RICO, the state law claims for false arrest and assault / battery, and the Fourth Amendment claims arising out of the alleged custodial arrest of Hirsch.[2]  This brief is submitted in support of their motions to dismiss.

B.    The Matters Alleged in the Complaint

The complaint in this case alleges that defendants Tracy Luna and Terry Johnson are police officers for the Town of Ardmore, Alabama.  (Complaint, ¶¶ 9.3, 9.8).  Officer Luna is alleged to have seen Hirsch maneuver his vehicle into a private business parking lot at approximately 11:50 p.m. on the night of July 25, 2009, and

---

[1]  Plaintiff also purports to assert a claim for civil relief under 18 U.S.C. § 242. It is clear that 18 U.S.C. § 242 does afford the basis for the assertion of a civil claim.  See, e.g., <u>Thibeaux v. United States Attorney General</u>, 275 Fed. Appx. 889, 893 (11th Cir. 2008) (holding that 18 U.S.C. § 242 "pertain[s] to criminal law and do[es] not provide a civil cause of action or any civil remedies").

[2]  The lack of maintainability of Hirsch's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") is discussed in a separate briefs filed by all defendants in support of motions to dismiss and for summary judgment directed to plaintiff's RICO claims.  Defendants Luna and Johnson and the remaining defendants have also filed a separate motion for summary judgment and supporting brief directed to the remaining claims brought under the Fourth Amendment to the United States Constitution, and the state law claims for false arrest and assault / battery.

to have thereupon activated the lights on his police cruiser and "drove over to where Plaintiff was parked." (Id. at ¶ 9.3).

Once in the parking lot with Hirsch, Officer Luna allegedly approached Hirsch's car window and requested identification — something that Hirsch claims "forc[ed] him to abruptly terminate his [telephonic] communication with his 91 year old mother, who is not in good health, without time to explain to her what was happening, which he learned later, caused her great emotional distress." (Id. at ¶ 9.4). The complaint alleges that Officer Luna subsequently directed Hirsch to exit his vehicle, and then contacted Officer Terry Johnson "for backup." (Id. at ¶ 9.8). Once Hirsch was outside his vehicle, Officer Johnson allegedly arrived and asked Hirsch whether he was armed; upon receiving an affirmative response, Officer Luna allegedly reached into Hirsch's pocket and removed a .22 caliber pistol. (Id. at ¶ 9.12). Critically, the complaint does not allege that Hirsch possessed any sort of license to carry a concealed weapon, and in fact, the complaint makes clear that Hirsch refused the officers' requests that he produce any sort of identification. (See id. at ¶¶ 9.7, 9.9).

After removing and securing the handgun in Hirsch's pocket, Officer Johnson allegedly handcuffed Hirsch and directed him to sit in the back of Officer Luna's cruiser. (Id. at ¶¶ 9.19, 9.23). Officer Luna then allegedly searched Hirsch's vehicle,

had it towed away and impounded, and transported Hirsch to the Town of Ardmore Jail. (Id. at ¶¶ 9.23, 9.25). Hirsch claims that once he arrived at the jail, he "initially refused to give his consent to being 'booked' because he had not been able to obtain the assistance of counsel to advise him of his rights, nor had he been taken before the Magistrate for a probable cause hearing as he had demanded, which would have made the booking process unnecessary if no probable cause was found." (Id. at ¶ 9.28). Hirsch further alleges that after his booking was finally completed, Officer Luna "refused to give [him] a copy of the complaint or police report per his request during his incarceration." (Id. at ¶ 9.30). Hirsch makes clear that he was released from jail the same day of his arrest, July 26, 2009, "after finally consenting to being booked and fingerprinted." (Id. at ¶ 9.31). Hirsch goes on to aver that Officer Luna "wait[ed] to make a complaint for his warrantless arrest until five days after [Hirsch's] release." (Id. at ¶ 9.38) (emphasis omitted). Further, Hirsch claims that at a subsequent court appearance on August 26, 2009, Officer Luna and "several other" unknown individuals searched Hirsch before allowing him to enter. (Id. at ¶ 9.58).

Based on the foregoing allegations, Hirsch asserts a number of federal and state law claims against Officers Luna and Johnson. All of these claims fail as a matter of law.

C.  Hirsch's Claims for Relief Under 42 U.S.C. § 1983
    Pursuant to Federal Constitutional Provisions Other
    than the Fourth Amendment Fail

All of the constitutional claims in Hirsch's complaint are, of necessity, brought pursuant to 42 U.S.C. § 1983. See generally Griffin v. City of Clanton, 932 F. Supp. 1359, 1365 (M.D. Ala. 1996) ("When an individual seeks redress in the courts for a violation of his constitutional rights, he may not sue directly under the United States Constitution. Rather, he must make his claim under 42 U.S.C. § 1983."). Claims under 42 U.S.C. § 1983 are subject to the assertion of qualified immunity by individual defendants.

The qualified immunity doctrine protects law enforcement officials from liability under 42 U.S.C. § 1983 "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002); see also Denno v. School Bd. of Volusia County, 218 F.3d 1267, 1272 (11th Cir. 2000) (noting that qualified immunity protects all except those whose "actions [were] so obviously wrong, in light of preexisting law, that only a plainly incompetent [] official or one who was knowingly violating the law would have done such a thing").

In other words, under the qualified immunity doctrine, governmental officials are not liable for civil damages if "their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808, 815 (2009); see also Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992) ("Under the qualified-immunity defense, defendants are immune from liability and even from trial if plaintiff's complaint fails to state a violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"), cert. denied, *sub nom*, Deutsch v. Oladeinde, 507 U.S. 987 (1993). The courts have observed time and again that "qualified immunity is the 'usual rule' for government actors sued in their individual capacities." Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001).

The complaint in this case fails to state a maintainable § 1983 claim sufficient to overcome the assertion by Officers Luna and Johnson of the defense of qualified immunity. Any evaluation of the availability of qualified immunity to a defendant must begin with an analysis of the plaintiff's complaint. As the Eleventh Circuit explained in Marsh v. Butler County, 268 F.3d 1014, 1022-23 (11th Cir. 2001) (*en banc*):

Once the affirmative defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985); Behrens v. Pelletier, 516 U.S. 299, 116 S. Ct. 834, 840, 133 L. Ed. 2d 773 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"). The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only. See Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) ("We repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation.")

\*　　\*　　\*

. . . We apply the qualified immunity defense to dismiss a complaint at the 12(b)(6) stage where, (1) from the face of the complaint, (2) we must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim – given the alleged circumstances – was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted.

Unless a plaintiff in a § 1983 case can point to case law that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under § 1983. See Wilson v.

Layne, 526 U.S. 603, 604 (1999) (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); Saucier v. Katz, 533 U.S. 194, 201-02, 209 (2001) (granting qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . ."); see also Vinyard v. Wilson, 311 F. 3d 1340, 1351-1353 (11th Cir. 2002) (recognizing that, based on the Supreme Court's decision in Hope v. Pelzer, 536 U.S. 730 (2002), unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held that the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity a § 1983 plaintiff must show that case law with "a very high degree of prior factual particularity" had previously determined the conduct to be unconstitutional under the provision relied upon).

Based upon the facts alleged in support of Hirsch's § 1983 claims, it is clear that Officers Luna and Johnson are entitled to qualified immunity with regard to any causes of action not brought pursuant to the Fourth Amendment to the United States Constitution. The "threshold question" under the qualified immunity analysis is this: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz,

533 U.S. 194, 201 (2001). If the answer to that question is "no" — in other words, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. A number of the claims in Hirsch's complaint do not pass this threshold inquiry because the constitutional provisions relied upon simply have no application, or because the facts alleged do not show a violation of the pertinent provisions.

1. Hirsch Has No Actionable Rights Under the Ninth Amendment

Hirsch invokes the Ninth Amendment throughout his complaint. By way of example, Hirsch asserts in Counts 1 and 2 that Officer Luna's actions in initiating the encounter with Hirsch in the parking lot violated his right to liberty and right to privacy under the Ninth Amendment to the United States Constitution. Further, in Count 9, Hirsch alleges Officers Luna and Johnson violated his right to bear arms under the Ninth Amendment during the course of the detention and arrest; in Count 12 Hirsch asserts again that he was deprived of his right to liberty in violation of the Ninth Amendment when he was detained at the jail; in Count 19, Hirsch claims he was deprived of his Ninth Amendment right to open and free access to the courts; and in Count 26, Hirsch posits that Officers Luna and Johnson transgressed his rights under the Ninth Amendment by violating their oaths of office.

Officers Luna and Johnson are due qualified immunity from any Ninth Amendment-based claims because "the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986). "A fortiori a § 1983 claim based solely on alleged Ninth Amendment rights must fail because there are no constitutional rights secured by that amendment." Charles v. Brown, 495 F. Supp. 862, 864 (N.D. Ala. 1980); see also Metz v. McKinley, 583 F. Supp. 683, 688 n.4 (S.D. Ga. 1984) ("[T]he Ninth Amendment standing alone houses no constitutional guarantees of freedom. Thus, plaintiff's assertion of the Ninth Amendment adds nothing to his attempt to demonstrate that his constitutional rights have been violated.") (internal citation omitted); Thomas v. Howze, 2008 WL 2359750, at * 4 (N.D. Fla. June 4, 2008) ("The Ninth Amendment does not authorize civil rights claims nor does it independently secure any constitutional rights."). Accordingly, Officers Luna and Johnson are due qualified immunity as to all Ninth Amendment claims. See Sweatt v. Bailey, 876 F. Supp. 1571, 1582 (M.D. Ala. 1995) ("If no constitutional right is at stake, then qualified immunity should be granted because the law necessarily cannot be clearly established.").

2.      Hirsch's First Amendment Free Speech Claim Fails
        as a Matter of Law

Hirsch also claims in Count 5 of his complaint that he was deprived of his First Amendment right to free speech when Officer Luna approached him and requested to see his identification. (Complaint, at ¶ 9.4). Hirsch does not allege that Officer Luna refused to allow him to speak or that he ordered him to stop speaking with someone else; nor does Hirsch allege that he was arrested in retaliation for his speech. Rather, Hirsch merely alleges that Officer Luna's *request for identification* somehow had the *effect* of "forcing him to abruptly terminate his [telephone] communication with his 91 year old mother." (Id.). In other words, Hirsch alleges that in response to Officer Luna interrupting him, Hirsch voluntarily hung up the phone. Such allegations simply do not form the basis for a First Amendment claim.

As the Ninth Circuit made clear in a case cited approvingly by the Eleventh Circuit in Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998), unless an officer is alleged to have arrested a citizen in retaliation for their speech, the mere fact that an arrest interrupts or happens to cause an incidental impact on speech that was occurring prior to the arrest is not sufficient to trigger the First Amendment. See United States v. Rubio, 727 F.2d 786, 791 (9th Cir.1984) ("We strongly disagree with any inference that criminal investigation is somehow prohibited when it interferes

with . . . First Amendment interests.  *When activity protected by the First Amendment becomes the subject of a criminal investigation, the protections afforded by the Fourth Amendment come into play*.") (emphasis supplied), cited approvingly in <u>Redd</u>, 140 F.3d at 1383; see also <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 565 (1978) (holding that Fourth Amendment requirements are sufficient to protect First Amendment interests that may be implicated in the course of a search).  Accordingly, the question in this case boils down to whether the Fourth Amendment was followed, something that is addressed in other counts of Hirsch's complaint.  It is completely irrelevant that "the offender [was] speaking at the time that he [wa]s arrested," <u>Redd</u>, 140 F.3d at 1383, because there is no clearly established law indicating that the First Amendment is implicated on the facts alleged.  Were it otherwise, law enforcement officers would risk violating First Amendment rights every time they made a traffic stop because it might later turn out that the suspect stopped was engaged in a telephone call (or a conversation with a passenger) at the time.  Such cannot be, and is not, the law.

3.      Hirsch Cannot Maintain a Cause of Action Under the Self-Incrimination Clause of the Fifth Amendment

In Count 6 of his complaint, Hirsch claims that his Fifth Amendment privilege against compelled self-incrimination was violated when, during the course of being

taken into custody, he was asked whether he was armed and answered "yes." (Complaint, at ¶ 9.12). Hirsch evidently argues he was coerced into responding to this question because he was "fearing for his personal safety and for his life." (Id.).[3] Given that Hirsch's own complaint makes clear he was being asked a question that bore directly on officer safety, the "public safety exception" to the Fifth Amendment privilege against self-incrimination applies. See United States v. Newsome, 475 F.3d 1221, 1225 (11th Cir. 2007) (noting that the public safety exception "also applies where there is a threat to the officers rather than the public"). According to Hirsch's own complaint, Officer Johnson asked whether Hirsch was armed in direct connection with his custodial arrest. (Complaint, at ¶ 9.12). Therefore, Officer Johnson acted in accordance with, rather than contrary to, clearly established law. See Newsome, 475 F.3d at 1225 ("We conclude that there was no violation of the Fifth Amendment in admitting Newsome's statements [regarding the location of a gun] because the public safety exception applies.").

---

[3] To the extent Hirsch is basing his claim on an alleged failure to provide a Miranda warning, he has not alleged any such omission, and such a failure would not amount to a cognizable constitutional violation in any event. See United States v. Patane, 542 U.S. 630, 641 (2004) ("Our cases also make clear the related point that a mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule."); Jones v. Cannon, 174 F.3d 1271, 1291 (11th Cir. 1999) ("We agree with the Third, Seventh, Eighth, and Tenth Circuits that failing to follow Miranda procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created.").

Hirsch's purported self-incrimination claim is barred for another reason as well: there are no allegations in his complaint, either inferential or explicit, that the word "yes," uttered in response to the question as to whether Hirsch was armed, was ever used against Hirsch in the course of any subsequent criminal proceeding. In Chavez v. Martinez, 538 U.S. 760 (2003), the Supreme Court confronted the question of whether a § 1983 suit based on a coerced waiver of the privilege against self-incrimination could go forward if the statements made pursuant to the waiver were never actually used against the suspect in a criminal case. Id. at 766. A plurality of the Court answered the question in the negative. Id. In reaching this conclusion, primary focus was devoted to the language of the Fifth Amendment itself, which provides that "[n]o person ... shall be compelled *in any criminal case* to be a witness against himself." U.S. Const. amend. V (emphasis supplied). Based upon this language, the Court held that "mere coercion does not violate the text of the Self-Incrimination Clause *absent use of the compelled statements in a criminal case against the witness*." Chavez, 538 U.S. at 769 (emphasis supplied). Although not defining precisely when a "criminal case" begins, the Court made clear that "police questioning does not constitute a 'case' any more than a private investigator's precomplaint activities constitute a 'civil case.'" Id. at 767. Accordingly, under Chavez the absence of any allegation in Hirsch's complaint that his statement

14

acknowledging that he was armed was ever used against him in the course of prosecution is independently sufficient to require dismissal of Count 6.

4. Hirsch Has Not Stated a Claim for Violation of His First Amendment Right to Free Exercise of His Religion

In Counts 8 and 9 of his complaint, Hirsch goes on to allege that Officer Luna's action in reaching into his pocket and removing the pistol constitutes a violation of his First Amendment "right of religious freedom" and Second Amendment "right to bear arms," respectively. Hirsch's First Amendment claim arising out of the seizure of his handgun is evidently brought pursuant to the Free Exercise Clause, which both forbids government discrimination against religious beliefs as such, and requires that the government not prohibit "conduct because it is undertaken for religious reasons." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993). But the Free Exercise Clause "does not and cannot imply that *incidental effects* of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions." Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988) (emphasis supplied); cf. Marsh v. Florida Dep't of Corrections, 330 Fed. Appx. 179, 181 (11th Cir. 2009) ("Normally, a law which is

15

neutral and generally applicable does not violate the free exercise clause of the First Amendment, even if the law has an incidental effect on religious practices.").

Here, Hirsch makes no allegation that the removal of the handgun was intended solely as a means of prohibiting exercise of his religion. Rather, the complaint makes quite clear that removal of the gun was a merely incidental aspect of Hirsch's arrest, and as such, does not violate the Free Exercise Clause. Cf. Klemka v. Nichols, 943 F. Supp. 470, 478 (M.D. Pa. 1996) (holding that the arrest of a plaintiff was not a substantial interference with the observation of the plaintiff's religion despite the fact that the arrest incidentally occurred during a religious vigil). Of course, even if the removal of the gun could be construed to have directly or substantially limited Hirsch's exercise of his religion, it is clear from the complaint itself that such an interference was justified by the compelling governmental interest in officer and inmate safety. See Hernandez v. Commissioner, 490 U.S. 680, 699 (1989) (noting that "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden."); see also, e.g., Johnson v. California, 543 U.S. 499, 514 (2005) (identifying a "compelling interest in prison safety"); United States v. Chaves, 169 F.3d 687, 691 (11th Cir. 1999) (referencing the "compelling" interest in officer safety that motivated the Supreme Court to allow

protective sweeps incident to arrests). At the very least, Hirsch can identify no clearly established law to the contrary.

> 5. Hirsch's Complaint Does Not State a Maintainable Claim for Deprivation of his Second Amendment Right to Bear Arms

With regard to the Second Amendment claim asserted in Count 9 — which, again, arises out of the confiscation of Hirsch's pistol incident to his custodial arrest — the Supreme Court has made very clear that although there is "an individual right to keep and bear arms," the Court does "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation." District of Columbia v. Heller, ___ U.S. ___, 128 S. Ct. 2783, 2799 (2008) (emphasis in original). In other words, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Id. at 2816; accord United States v. White, ___ F.3d ___, 2010 WL 59127, at * 5 (11th Cir. Jan. 11, 2010).

Because of the obvious officer safety concerns arising from arrestees possessing firearms while in police custody, courts have recognized that the right to bear arms does not inhere during arrests. The United States District Court for the Northern District of Texas addressed this precise question in Hunter v. City of Electra, 2006 WL 1814150 (N.D. Tex. June 29, 2006). In Hunter, an arrestee brought a civil action claiming that "police officers violated his constitutional rights under the

17

Second and Fourteenth Amendments when they seized and confiscated his firearm at the time of his arrest." Id. at * 7.  After noting that Circuit precedent at the time already recognized an individual right to bear arms under the Second Amendment, the court went on to explain that "the right to bear arms is subject to 'limited, narrowly tailored specific exceptions or restrictions for particular cases.'" Id. (quoting United States v. Emerson, 270 F.3d 203, 260 (5th Cir. 2002)).  One of those exceptions, the court held, makes it lawful "for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure." Hunter, 2006 WL 1814150, at * 7 (citing Dickerson v. City of Denton, 298 F. Supp. 2d 537, 540-41 (E.D. Tex. 2004) ("So long as the requirements of the Fourth Amendment are met, police officers may . . . confiscate guns that they believe have been used to commit a crime.  Such a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms.").  Accordingly, the court concluded that "[b]ecause Hunter was being lawfully arrested when officers confiscated his gun, he cannot show that his Second Amendment rights were violated." Hunter, 2006 WL 1814150, at * 7.  Because the complaint in this case makes clear that Hirsch's weapon was seized in the course of a custodial arrest, the Hunter analysis applies, and the Second Amendment claim must be dismissed.

To the extent Hirsch's complaint suggests that the refusal to allow him to possess the pistol after he was arrested but during his detention in the Town of Ardmore Jail, his claim still fails. Among other limitations on the scope of the right to bear arms under the Second Amendment, the Supreme Court in <u>Heller</u> announced that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and *government buildings*." <u>Heller</u>, 128 S. Ct. at 2816-17 (emphasis supplied).

Finally, insofar as Hirsch alleges that it was not the seizure of his weapon at the time of his arrest or the denial of access during detention that violated his Second Amendment rights, but the alleged continued possession of that gun by the Town of Ardmore for some period to time after his release, there remains no merit to his claim.[4]  In <u>Garcha v. City of Beacon</u>, 351 F. Supp. 2d 213 (S.D.N.Y. 2005), an arrestee brought a § 1983 action arising out of the confiscation of his pistol, noting that his pistol was not only temporarily taken from him but also was later destroyed by order of a court.  <u>Id</u>. at 214-15.  The defendant City and police officers moved to

---

[4] The weapon taken by the arresting officers from Hirsch at the time of his arrest has been returned to Hirsch.  After the criminal charges upon which Hirsch was arrested were dismissed by Ardmore Municipal Judge William G. Mathews, the weapon was ordered returned to Hirsch by Judge Mathews and was returned.  (See Affidavit of Ardmore City Prosecutor Brandon Chadwick "Chad" Wise submitted in support of Motion for Summary Judgment on claims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* at ¶ 6.)

dismiss the complaint on the ground that the Second Amendment was not violated, and the court granted the motion. Id. at 217. In particular, the court held that "the 'right to bear arms' is not a right to hold some particular gun." Id. And since "[n]othing in plaintiff's pleading or other papers suggests that any action taken by defendants would prevent him from acquiring another weapon," no violation of the Second Amendment was stated. Id. Likewise, here, Hirsch makes no claim that Officers Luna or Johnson prohibited or otherwise prevented him from obtaining a firearm subsequent to his release from jail; because he was free to do so, no Second Amendment violation arises out of any alleged retention of the confiscated weapon.[5]

---

[5] Moreover, the Supreme Court has held that the intentional deprivation of property by state actors does not constitute a civil rights violation as long as the state provides a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Because Hirsch would have adequate state remedies such as conversion, any constitutional claim would be squarely precluded. See, e.g., Burns v. Thorne, 2009 WL 113290, at * 2 (S.D. Tex. Jan. 14, 2009) ("To the extent plaintiff believes that his property was wrongfully appropriated during his arrest and booking, his proper remedy is through the state courts. Because Texas has adequate post-deprivation state remedies for the confiscation of prisoner property, plaintiff may not pursue his claim for deprivation of property in a Section 1983 action."); Crow v. Cotten, 2002 WL 31697730 (N.D. Tex. Nov. 27, 2002) at *5 (complaint by arrestee regarding seizure of his personal property from his vehicle following arrest and loss of personal property inventory at booking held frivolous when plaintiff had a state law remedy for conversion).

6.     Hirsch's Complaint Fails to Set Forth Any Violation
        of the Due Process or Equal Protection Clauses

In at least two places in his complaint, Hirsch alleges that Officer Luna, Officer

Johnson, or both of them deprived him of his rights under the Due Process or Equal

Protection Clauses of the Fourteenth Amendment.[6]

In paragraph 9.39, Hirsch alleges that Officer Luna refused to provide him with

a copy of the police report in response to his request, and in the succeeding Count 16,

Hirsch claims this refusal violated his due process rights and entitlement to equal

protection of the laws.  But Hirsch has alleged no basis for any duty on the part of

Officer Luna to provide him with a police report or right to view such a report.  Cf.

Center for Nat'l Sec. Studies v. United States Dep't of Justice, 331 F.3d 918, 934

(D.C. Cir. 2003) ("The narrow First Amendment right of access to information . . .

does not extend to non-judicial documents that are not part of a criminal trial, such

as the investigatory documents at issue here.").  Nor does Hirsch allege that the police

report was ever used against him in a criminal trial without prior disclosure.

---

[6] Hirsch actually alleges violations of due process and equal protection under the Fifth
Amendment as well, but it is well-settled that the Due Process Clause and the concept of equal
protection embedded within the Fifth Amendment do not apply to the states.  See In re Winship, 397
U.S. 358, 378 n.3 (1970); Davis v. Passman, 544 F.2d 865, 868 (5th Cir. 1977).  Accordingly, since
Hirsch has included no allegations regarding any federal involvement, his claims for violation of due
process and equal protection under the Fifth Amendment fail.  See Dickerson v. City of Denton, 298
F.Supp.2d 537, 541 (E.D. Tex. 2004); Daniell v. City of Haines City, 2009 WL 1850307, at * 2
(M.D. Fla. June 25, 2009).

Even if Hirsch was entitled under state law to receive the police report allegedly requested, Officer Luna's failure to provide it does not constitute the basis for any maintainable § 1983 claim sufficient to overcome the assertion of the defense of qualified immunity. See Harris v. Birmingham Board of Education, 817 F.2d 1525, 1527 (11th Cir. 1987) (even though state statutory requirement violated, such "does not prove a violation of a federal constitutional right."); Padgett v. Mosley, 2007 WL 2409464, at * 8 (M.D. Ala. Aug. 20, 2007) ("[N]ot every violation of state or federal law or state are federally-mandated procedures is a violation of the constitution . . . . [T]hat Defendants may have failed to . . . comply with administrative regulations provides . . . no basis for relief in this complaint. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima.") (citations omitted); see also Smith v. State of Georgia, 684 F.2d 729, 732 n. 6 (11th Cir. 1982) ("[E]ven if DAS departed from its own guidelines, not every violation by state agents of its own rules rises to the level of a due process infringement.").

Moreover, to the extent Hirsch alleges a violation of equal protection arising out of the denial of access to the police report, his complaint completely fails to set forth the requisite facts to support such a claim under the pertinent pleading standard.

"The Equal Protection Clause 'is essentially a direction that all persons *similarly situated* should be treated alike.'" Spence v. Zimmerman, 873 F.2d 256, 261 (11th Cir.1989) (emphasis supplied). Accordingly, "to state an equal protection claim, [a plaintiff] must allege that she is similarly situated with individuals who were treated differently than she[.]" Sims v. Glover, 84 F. Supp. 2d 1273, 1285 (M.D. Ala. 1999); see also Draper v. Reynolds, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004); Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). This requirement applies regardless of whether the claim asserted is predicated on membership in a protected class or on a so-called class of one theory. See Hernandez v. Florida Dep't of Corrections, 281 Fed. Appx. 862, 867 (11th Cir. 2008).

Where, as here, the complaint contains no allegation that the plaintiff was treated any differently than anyone else in regard to the action at issue, an equal protection clause claim fails as a matter of law. Hernandez, 281 Fed. Appx. at 867 ("Regardless of the possible basis for the alleged denial of equal protection, however, we conclude that Hernandez failed to state an equal protection claim because he did not allege facts showing that any similarly situated prisoners received more favorable treatment. . . . Because Hernandez did not allege that the individual defendants treated similarly situated prisoners more favorably than him, we conclude that the district court properly dismissed his equal protection claim."). This failure is not excusable

merely because Hirsch is proceeding *pro se*. "All litigants, including those proceeding *pro se*, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe [a *pro se* plaintiff's] pleadings, . . . the court does not have 'license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain a cause of action.' " <u>Coggins v. Tallapoosa County Court</u>, 2008 WL 2568375 at *1 (M.D. Ala. June 25, 2008) (Hobbs, J.) (quoting <u>GJR Investments, Inc. v. County of Escambia</u>., 132 F. 3d 1359, 1369 (11th Cir. 1998). Moreover, "this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." <u>GJR</u>, 132 F.3d at 1367. This requirement specifically applies to the "similarly situated" requirement of equal protection claims; and, where the equal protection claim at issue is, like here, of the "class of one" variety,[7] the courts "are obliged to apply the 'similarly situated' requirement with rigor." <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1207 (11th Cir. 2007). Since Hirsch does not allege the existence of any similarly situated comparators or set forth the manner in which those comparators are similar to him, his complaint does not

---

[7] Hirsch no where alleges his race or any other information sufficient to determine whether he claims membership in any suspect class. Accordingly, "[t]his is not the normal equal protection case." <u>Griffin Industries, Inc. v. Irvin</u>, 496 F.3d 1189, 1200 (11th Cir. 2007).

24

satisfy the heightened pleading requirement. See, e.g., <u>Douglas Asphalt Co. v. Qore, Inc</u>., 541 F.3d 1269, 1275 (11th Cir. 2008).

In addition to his claim regarding the denial of a police report, Hirsch alleges that Officers Luna and Johnson somehow participated in a "show of force" at the Municipal Court in an effort to harass him, thereby violating his due process and equal protection rights, even though he was not prohibited from entering the courthouse and evidently attended the hearing he was there to attend.[8] (Complaint, at 9.57-9.63; <u>id</u>. at Count 19). These allegations not only fail to state a violation of any "clearly established" constitutional right, but also fail to allege a violation of a constitutional right in the first instance. There is simply no case law which has determined that stationing extra security outside of a courtroom and requiring persons (particularly a defendant), entering the court premises to submit to a search constitutes a violation of a constitutional right of any sort, and certainly not any right under the Fourteenth Amendment. As a consequence, Officers Luna and Johnson are entitled to a determination of qualified immunity in their favor at the outset of the qualified immunity analysis.

---

[8] See generally <u>Godinez v. Gomez</u>, 276 Fed. Appx. 589, 590 (9th Cir. 2008) ("The district court properly dismissed Godinez's right of access to the courts claim because Godinez failed to allege any actual injury."); <u>Sands v. Lewis</u>, 886 F.2d 1166, 1171 (9th Cir.1989) ("An actual injury consists of some specific instance in which an inmate was actually denied access to the courts.") (internal quotations omitted).

7.   Hirsch's Fourth Amendment Rights Were Not
Violated During the Alleged Courthouse Search

In addition to the Fourteenth Amendment claims arising out of the alleged courthouse "show of force" discussed above, Hirsch apparently contends in Count 20 that Officers Johnson and Luna somehow violated his Fourth Amendment rights when Officer Luna allegedly performed a "warrantless search" of him before allowing him to enter the Municipal Courthouse.   (Complaint, ¶ 9.58).   Contrary to the assumption set forth in the complaint, there is no requirement that law enforcement officers possess a warrant in order to perform a routine search of individuals entering sensitive government buildings such as courthouses.

As the Eleventh Circuit recently held, "[a]mong the exceptions to the Fourth Amendment's general warrant requirement defined by the Supreme Court are exceptions to address the 'special needs' of the government beyond the 'normal need for law enforcement.'" Johnston v. Tampa Sports Authority, 530 F.3d 1320, 1326 n.7 (11th Cir. 2008) (quoting Ferguson v. City of Charleston, 532 U.S. 67, 74 n.7 (2001) (noting that "a search unsupported by either warrant or probable cause can be constitutional when 'special needs' other than the normal need for law enforcement provide sufficient justification")).

Sometimes characterizing this rationale as an "administrative search" exception to the warrant requirement, Klarfeld v. United States, 944 F.2d 583, 586 (9th Cir. 1991), courts across the country have repeatedly applied this principle to uphold suspicionless searches of individuals entering government buildings and courthouses. See, e.g., Roundtree v. City of New York, 778 F. Supp. 614, 620 n.1 (E.D.N.Y. 1991) ("It is not clear whether the plaintiff asserts that the "pat down" at the courthouse was an unconstitutional search. Regardless, such a search is clearly constitutional as an administrative search to ensure the security of the courthouse.") (citing McMorris v. Alioto, 567 F.2d 897, 898, 901 (9th Cir. 1978) (holding that a "limited search conducted as a condition of entering a state courthouse" is not violative of the Fourth Amendment); see also Klarfeld v. United States, 944 F.2d 583, 586 (9th Cir. 1991) (upholding searches of attorneys who enter federal courthouses under "administrative search" exception); Downing v. Kunzig, 454 F.2d 1230 (6th Cir.1972) (upholding searches upon entrance to federal courthouses), cited approvingly in Johnston v. Tampa Sports Authority, 530 F.3d 1320, 1326 n.7 (11th Cir. 2008); United States v. Graham, 117 F. Supp. 2d 1015, 1021 (W.D. Wash. 2000) (" Searches at airports and courthouses are intended to prevent persons from carrying weapons or explosives aboard an aircraft or into a courthouse. Such limited searches are narrowly designed to prevent violence in sensitive facilities by the least intrusive means feasible.").

Indeed, the Supreme Court of the United States has gone so far as to categorize courthouse entrance searches as proverbial exemplars of reasonableness. See <u>Chandler v. Miller</u>, 520 U.S. 305, 323 (1997) ("[W]here the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable' — for example, searches now routine at airports and at entrances to courts and other official buildings."). Given the weight of this authority, it simply cannot be contended that Hirsch's Fourth Amendment rights were violated when he was subjected to a search prior to being allowed to enter the Ardmore Municipal Court. Therefore, Officers Luna and Johnson are due qualified immunity as to any such claim.

> D. Hirsch Has No Maintainable Claim Against Officers Luna and Johnson Under the Alabama Constitution of 1901 or Under Any Alabama Criminal Statute or Rule of Criminal Procedure

Throughout his complaint, Hirsch alleges violations by Officers Luna and Johnson of the <u>Alabama Constitution of 1901</u>. However, it is clear that Hirsch has no maintainable against said defendants under the <u>Alabama Constitution of 1901</u>. The Alabama Supreme Court has squarely addressed this issue. In <u>Matthews v. Alabama Agricultural & Mechanical University</u>, 787 So. 2d 691 (Ala. 2000), a plaintiff filed an action against several defendants alleging, in part, that his

constitutional rights under the Alabama Constitution had been violated. <u>Matthews</u>, 787 So. 2d at 698: "Matthews also alleges that the University employees violated certain rights he claims are guaranteed to him by the <u>Constitution of Alabama of 1901</u>. For these alleged violations, Matthews seeks both compensatory and punitive damages." The Supreme Court in <u>Matthews</u> squarely held that no such cause of action existed. The Court stated:

> . . . Matthews presented no authority to the trial court, and he has presented no authority to this court, that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901, and we have found none . . . Therefore, the trial court properly entered the summary judgment in favor of the University employees on [the plaintiff's money damage claims for violation of the Alabama Constitution].

<u>Id</u>.

Federal courts in Alabama, construing Alabama law, have reached the same result. See <u>Roberts v. City of Geneva</u>, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) ("Plaintiff seeks compensatory and punitive damages from the city for alleged violations of the Alabama Constitution, but has not cited any authority which provides for a private cause of action for alleged violations. Thus, the court finds that the city is entitled to summary judgment on plaintiff's claims alleging violations of the Alabama Constitution."); see also <u>Ross v. State of Alabama</u>, 893 F. Supp. 1545,

1555 (M.D. Ala. 1995). Accordingly, the claims under the <u>Alabama Constitution of 1901</u> must be dismissed for failure to state a claim upon which relief can be granted.

At other places in his complaint, although not directly asserting cause of actions for such violation, Hirsch asserts that Officers Luna and Johnson acted in violation of the Alabama Rules of Criminal Procedure, and contrary to Ala. Code §§ 13A-10-2, 13A-10-130, 13A-6-23, 13A-6-25, 13-A-8-4, 15-10-3, and 32-5-171. All of the above-cited sections are either criminal statutes or statutes providing authority for arrests. None of the foregoing statutes create any sort of private right of action. See generally <u>Chen ex rel. V.D. v. Lester</u>, 2010 WL 339789, at * 5 (11th Cir. Feb. 1, 2010) ("Criminal statutes generally do not provide a private cause of action."). The Alabama Supreme Court has made clear that "[o]ne claiming a private right of action within a statutory scheme must show *clear evidence* of a legislative intent to impose civil liability for a violation of the statute." <u>American Auto. Ins. Co. v. McDonald</u>, 812 So. 2d 309, 311 (Ala. 2001) (emphasis supplied). The Alabama Supreme Court has further addressed, in general fashion, the availability of a private right of action under state criminal statutes. Clarifying earlier statements, the Court in <u>Martinson v. Cagle</u>, 454 So. 2d 1383 (Ala. 1984), held that although an act that constitutes a crime may also be the basis of a civil action, civil liability will exist "only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed

to the plaintiff, or constitute some cause of action for which relief may be granted." Id. at 1385. The Court went on to hold that counts of a complaint alleging merely that "criminal acts were committed and that the Martinsons were thereby injured, do not state a cause of action for which relief may be granted." Id.; see also Prill v. Marrone, 23 So. 3d 1, 11 (Ala. 2009) (relying upon Martinson to hold that no private right of action exists under the Alabama criminal conspiracy statutes); Hardesty v. CPRM Corp., 391 F. Supp. 2d 1067, 1071 (M.D. Ala. 2005) (dismissing causes of action based on criminal statutes after finding that, "[l]ike the causes of action based on criminal acts in Martinson, Plaintiffs' Count II alleges only that the Defendants violated a criminal statute and that the Plaintiffs were damaged.").

Likewise, no claim exists for violation of the Alabama Rules of Criminal Procedure under either state or federal law. See generally Martinson, 454 So. 2d at 1385; Harris v. Birmingham Board of Education, 817 F.2d 1525, 1527 (11th Cir. 1987) (even though state statutory requirement violated, such "does not prove a violation of a federal constitutional right."); Padgett v. Mosley, 2007 WL 2409464, at * 8 (M.D. Ala. Aug. 20, 2007) ("[N]ot every violation of state or federal law or state are federally-mandated procedures is a violation of the constitution . . . . [T]hat Defendants may have failed to . . . comply with administrative regulations provides . . . no basis for relief in this complaint. Any right of that nature is grounded in state

law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima.") (citations omitted); see also Smith v. State of Georgia, 684 F.2d 729, 732 n. 6 (11th Cir. 1982) ("[E]ven if DAS departed from its own guidelines, not every violation by state agents of its own rules rises to the level of a due process infringement.").

### E. Hirsch Has No Maintainable Claim Against Officers Luna or Johnson for "Violation of Oath of Office" or "Gross Negligence"

Although Hirsch includes counts for both "violation of oath of office" and "gross negligence," neither of these amount to actionable torts under Alabama or federal law. Indeed, the Alabama Supreme Court has plainly held that "[t]he word 'gross,' when used in connection with the word 'negligence,' implies nothing more than simple negligence." Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala. 1998) (citing Stringer v. Alabama Midland R.R., 13 So. 75 (1893)). Moreover, a "negligence-based" claim is not cognizable under 42 U.S.C. § 1983. See Davidson v. Cannon, 474 U.S. 344 (1986). Accordingly, Hirsch's claim for "gross negligence" must be dismissed as a matter of law. Moreover, the "gross negligence" claim in Count 15 of Hirsch's complaint is solely based upon Officer Luna's alleged actions in "waiting to make a complaint for his warrantless arrest until five days after his

release." (Complaint, at ¶ 9.38). Even if true, such a delay does not amount to actionable misconduct under Alabama law, and did not cause any damage to Hirsch.

Furthermore, there is no legal basis for Hirsch's cause of action for "violation of oath of office." The Eleventh Circuit has specifically held under federal statutes providing that state legislators must take an oath to uphold the Constitution that "oath requirements for certain state officials, do not create a private cause of action." Chen ex rel. V.D. v. Lester, 2010 WL 339789, at * 5 (11th Cir. Feb. 1, 2010); cf. Bresler v. Dretke, 2006 WL 1867836, at * 2 (N.D. Tex. July 6, 2006) ("Additionally, claims based on an alleged failure to take the oaths of office required by Texas state law do not raise a federal constitutional claim."). The only foundation Hirsch identifies for any right to expect officials to comply with their oaths of office is the Ninth Amendment to the United States Constitution. As set forth exhaustively above, the Ninth Amendment does not confer any actionable rights. See, e.g., Metz v. McKinley, 583 F. Supp. 683, 688 n.4 (S.D. Ga. 1984).

<u>Conclusion</u>

For the foregoing reasons, the motion to dismiss of Officers Luna and Johnson is due to be granted.

s/ George W. Royer, Jr.
George W. Royer, Jr.

s/ David J. Canupp
David J. Canupp

LANIER FORD SHAVER & PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
Huntsville, AL 35805
Phone: 256-535-1100
Fax: 256-533-9322
E-mail: gwr@lanierford.com & djc@lanierford.com

Attorneys for Defendants Tracy Luna and Terry Johnson

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon with the Clerk of the Court using the CM/ECF system and that I have served a copy of the foregoing by depositing a copy of the same in the United States mail, postage prepaid and properly addressed to:

> Arthur Hirsch
> 3121 Buffalo Road
> Lawrenceburg, TN  38464

on this the 12th day of March, 2010.

s/ George W. Royer, Jr.
George W. Royer, Jr.