IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ARTHUR HIRSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA NO. 2:10-cv-00134-HGD |
| | ) | |
| WILLIAM G. MATHEWS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT SANDRA TUCKER

A.    Introduction

This action was commenced on January 22, 2010 by the filing of a complaint

in the United States District Court for the Northern District of Alabama by plaintiff

Arthur Hirsch.  The matters at issue in this case arise out of plaintiff's arrest on July

26, 2009 and subsequent prosecution in the Municipal Court for the Town of

Ardmore, Alabama.

Plaintiff has sued numerous defendants, including the town prosecutor, the

municipal court judge, the two police officers involved in his arrest, the police chief,

two jailers, the clerk-magistrate of the Town of Ardmore and the mayor and members

of the Town Council of the Town of Ardmore.  He has also sued the towing company

that towed his vehicle from the scene of his arrest after he was taken to jail.

Plaintiff's federal claims are asserted under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").[1]

Defendant Sandra Tucker was sued for actions taken in her capacity as a magistrate judge for the Town of Ardmore. Magistrate Tucker has filed a motion to dismiss all claims against her on immunity grounds, and because the causes of action set forth in the complaint fail the state a claim upon which relief can be granted. This brief is submitted in support of Magistrate Tucker's motion to dismiss.

### B.    The Matters Alleged in the Complaint

Plaintiff alleges in his complaint that, after being arrested and released from jail, he was taken before Sandra Tucker, who he describes as the "Ardmore clerk-magistrate." (Complaint, ¶ 9.32).[2] Plaintiff alleges that Magistrate Tucker executed

---

[1] Although Magistrate Tucker is entitled to judicial immunity, the lack of maintainability of any claims against her under RICO is discussed in separate briefs filed by all defendants in support of motions to dismiss and for summary judgment on the plaintiff's RICO claims. It also should be noted that while plaintiff purports to assert a claim for civil relief under 18 U.S.C. § 242, that statute does not afford the basis for the assertion of a civil claim. See, e.g., Thibeaux v. United States Attorney General, 275 Fed. Appx. 889, 893 (11th Cir. 2008) (holding that 18 U.S.C. § 242 "pertain[s] to criminal law and do[es] not provide a civil cause of action or any civil remedies").

[2] Alabama law provides that all municipal court clerks are, and have the powers of, municipal magistrates. City of Bayou La Batre v. Robinson, 785 So. 2d 1128, 1133 (Ala. 2000) ("Alabama law establishes that all municipal-court clerks are magistrates.") (citing Ala. R. Jud. Admin. 18 I.(B)(1)(a)); Curtis v. City of Sheffield, 502 So. 2d 829 (Ala. Crim. App.), rev'd on other grounds, 502 So. 2d 833 (Ala.

an appearance bond agreement, set bail at $750.00 and received cash for same, and scheduled plaintiff's arraignment. (Id.). Plaintiff complains that Magistrate Tucker's actions in doing the foregoing violated "procedure" because, among other things, she allegedly: did not make a probable cause determination or review "any verified evidence"; failed to cite to plaintiff the law he allegedly violated; failed to inform plaintiff of his alleged right to counsel; failed to provide plaintiff a copy of the complaint against him "since it was non-existent at that time"; and "intentionally overcharged Plaintiff by an amount of $450.00 for the appearance bond." (Id. at ¶¶ 9.33-.34).

Plaintiff alleges that after securing his release through the payment of the appearance bond, he returned to the Ardmore Town Hall to visit Magistrate Tucker and request from her (rather than from the prosecutor, through the filing of a motion for discovery) "copies of various governmental documents which he needed for his defense." (Id. at ¶ 9.44). Plaintiff goes on to aver that Magistrate Tucker refused to produce the requested documents "but said she that she would send them to him by mail in 2-3 days, which she did not do as promised." (Id. at ¶ 9.45). Plaintiff further claims that at the same time, Magistrate Tucker refused "Plaintiff's three requests for her to issue a subpoena and subpoena duces tecum (compulsory process) on his

1986)).

3

behalf in the above styled case." (Id. at ¶ 9.48).  According to plaintiff, Magistrate Tucker "refused to give him the cite" for the law upon which she relied in denying the request for a subpoena, and "threatened him with arrest" for his conduct.  (Id. at ¶¶ 9.50-.51).

Plaintiff further alleges that Magistrate Tucker allegedly "connive[d]" with the Town's municipal court judge, the town prosecutor, the police chief, and the arresting officers in this case for a "show of force" at the Municipal Court on August 26, 2009. (Id. at ¶ 9.58).  According to plaintiff, he "sensed" that he was "the reason for the high security," and further alleges that he was searched prior to entering the Municipal Court building.  (Id.).  However, plaintiff offers no factual specifics at all regarding his contention that Magistrate Tucker "connived" with all of the remaining defendants to put on the "show of force" at the Municipal Court on August 26, 2009. He simply alleges, without any factual specifics regarding Magistrate Tucker, that the "show of force" was for the purpose of intimidating him and his witnesses.  (Id. at ¶¶ 9.61-9.63).

Next, plaintiff claims that he attempted to commence a civil counterclaim against the Town of Ardmore in his criminal case "by mailing said counterclaim document and summons to [Magistrate] Tucker . . . to be filed into the case docket, the summons executed and issued, and served on counterclaim defendant by certified

mail." (Id. at ¶ 9.79). According to the complaint, however, Magistrate Tucker "refused" to "send a certified copy of said counterclaim and summons by return mail to him as she had done in the past as proof for his records," and "has not filed said counterclaim into the court record to date." (Id.).

Finally, plaintiff alleges that Magistrate Tucker "connived" and "colluded" with the town prosecutor and municipal court judge to "damage Plaintiff's right to a speedy trial" through a continuance. (Id. at ¶ 9.83). Critically, plaintiff does not allege that Magistrate Tucker granted the continuance at issue; instead, he merely alleges that Magistrate Tucker wrote him a letter informing him that the Town Prosecutor had requested a continuance. (Id.). Nevertheless, plaintiff concludes that Magistrate Tucker and all other defendants "have breached their oaths of office and breached their lawful obligation and duty and have thereby damaged Plaintiff's constitutionally protected civil rights." (Id. at ¶ 9.89).

C.    Magistrate Sandra Tucker is Entitled to Absolute
          Judicial Immunity from All of Plaintiff's Claims

It is clear from a review of the complaint that all of the conduct attributed to Magistrate Tucker, even if it occurred, involves actions taken by her in her judicial capacity as Magistrate of the Municipal Court for the Town of Ardmore in connection with the criminal charges upon which plaintiff was arrested. Because such is the

case, Magistrate Tucker has absolute judicial immunity from the plaintiff's federal and state law claims in this action.[3]

The United States District Court for the Southern District of Alabama has helpfully summarized the law regarding absolute judicial immunity, remarking as follows:

> A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any act performed in the judicial role. This immunity extends to Justices of the Peace as well as those who sit on the Supreme Court, and shields judges unless they act in 'the clear absence of all jurisdiction over subject matter' or in a nonjudicial capacity." Brewer v. Blackwell, 692 F.2d 387, 396 (5th Cir. 1982) (all citations including internal citations, omitted); see also Mireles [v. Waco], 502 U.S. [9,] 11-12 [(1991)]. . . . The Supreme Court of Alabama has specifically extended "the principle of judicial immunity to the discretionary judicial acts of magistrates[.]" City of Bayou La Batre v. Robinson, 785 So. 2d [1128,] 1133 [(Ala. 2000)]; see also Almon v. Gibbs, 545 So. 2d 18, 20 (Ala. 1989) ("[W]arrant magistrates are accorded the same immunity as judges. . .

---

[3] The doctrine of judicial immunity applies to bar all of plaintiff's causes of action for damages, whether brought pursuant to 42 U.S.C. § 1983, RICO, or state law. See Dykes v. Hosemann, 776 F.2d 942, 953 (11th Cir. 1985) ("Courts have consistently upheld the use of judicial immunity in section 1983 suits."); Wilson v. Bush, 196 Fed. Appx. 796, 798-799 (11th Cir. 2006) (applying absolute judicial immunity in the context of a civil RICO action); Kirkendall v. Grambling & Mounce, Inc., 4 F.3d 989, at * 3 (5th Cir. 1993) (Table) ("Kirkendall's argument that there is no judicial or quasi-judicial immunity in a civil RICO action is frivolous."); Ex parte City of Greensboro, 948 So. 2d 540, 543-44 (Ala. 2006) (applying absolute judicial immunity to bar state law claims for negligence and wantonness).

. Consequently, where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity. This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority.").

McCoy v. City of Mobile, 2005 WL 2453742, at * 2 (S.D. Ala. Oct. 3, 2005).

As is evidenced by the foregoing, the doctrine of absolute judicial immunity is fully applicable to municipal court judges or municipal clerk-magistrates regarding actions taken by them in their judicial capacity in criminal cases before a municipal court. See, e.g., Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (applying absolute immunity to a "municipal police justice"); Coggins v. Tallapoosa County Court, 2008 WL 2568375, at * 3 (M.D. Ala. June 25, 2008) ("When a court clerk acts under command of court decrees or under explicit instructions of a judge," or "when a court clerk acts pursuant to authority granted by state law and acts on behalf of a court, the clerk is absolutely immune from damages liability") (internal quotations omitted); Pittman v. Hunnicutt, 2009 WL 2971360, at * 2 n.1 (M.D. Ga. Sept. 16, 2009) ("Because Magistrate Mizzola was acting within her judicial capacity, she has absolute immunity from liability to plaintiff for any claim for damages."); Ex parte City of Greensboro, 948 So. 2d 540, 543-44 (Ala. 2006) ("Davis's actions, as a magistrate and court clerk for the City of Greensboro, were discretionary judicial acts.

She is entitled to absolute judicial immunity, and the City of Greensboro cannot be held liable for those acts."); Almon v. Gibbs, 545 So.2d 18, 20 (Ala. 1989) ("Consequently, where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity. This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority.").

The seminal American decision on judicial immunity is Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1871), wherein the United States Supreme Court observed that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequence to himself." Bradley, 80 U.S. (13 Wall.) at 347. The leading modern case is Stump v. Sparkman, 435 U.S. 349 (1978). In Stump, a state court judge who entered an order to sterilize a 15-year-old without her knowledge was held by the Supreme Court to be protected by absolute judicial immunity, even though the "case" ordering the sterilization was not assigned a docket number, was not on file in the clerk's office, and was "approved in an ex parte proceeding without notice to the minor, without a

hearing, and without the appointment of a guardian ad litem." Stump, 435 U.S. at 360.

In Stump, the Supreme Court established a two-part test to determine whether an act was sufficiently "judicial" to warrant immunity from lawsuits for money damages. First, did the judge deal with the plaintiff in her judicial capacity? Id. at 362. Second, if the judge did act in her "judicial capacity," then the focus is on whether the judge acted in the "clear absence of all jurisdiction." Id. at 357 (quoting Bradley, 89 U.S. at 351); accord Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000). If both of these conditions are satisfied, "immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Bolin, at 1239 (citing Stump, 435 U.S. at 356); see also Ex parte City of Greensboro, 948 So. 2d 540, 543 (Ala. 2006) ("This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority.") (internal quotations omitted).

Whether an act is done within a judge's "judicial capacity" is determined by "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Mireles v. Waco, 502 U.S. 9, 12 (1991) (citing Stump, 435 U.S. at 362). Here, it is clear that in taking the various actions complained of by

plaintiff in connection with the criminal proceedings pending against him in the Municipal Court for the Town of Ardmore, Magistrate Tucker was acting in a judicial capacity. As set forth above, plaintiff argues Magistrate Tucker acted wrongfully or erroneously in setting bail, denying his requests for "governmental documents," refusing his requests for subpoenas, denying his request to file a civil counterclaim in a criminal action, and granting or communicating with him regarding unlawful continuances. Whether or not Magistrate Tucker was legally correct in making the various rulings and taking the actions complained of is irrelevant because she was acting in an unmistakably judicial capacity.[4]

In Stump, the plaintiff argued that the judge in that case had not acted in a "judicial capacity" because of "grave procedural errors." The Supreme Court held otherwise and concluded that the alleged commission of "grave procedural errors" does not operate to defeat judicial immunity. Stump, 435 U.S. at 359 ("[A] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). In so holding, the Supreme Court rejected the notion — erroneously regarded as significant by the

_____

[4] In point of fact, state law clearly provides municipal magistrates with authority to, among other things, set bail "in accordance with the discretionary bail schedule," and to grant continuances upon the approval of a municipal judge. Ala. Code § 12-14-51(c); see also Ala. Code § 12-14-31 (noting that magistrate judges may designate municipal officers to set appearance bonds).

Seventh Circuit in its consideration of the case below — that a judge's "failure to comply with elementary principles of procedural due process" (see <u>Sparkman v. McFarlin</u>, 552 F.2d 172, 174 (7th Cir. 1977)), required him to be deprived of his cloak of judicial immunity. <u>Id</u>. at 349.

Plaintiff's wholly unsupported allegation that Magistrate Tucker "connived" with the municipal judge, prosecutor, police chief, and arresting officers to increase court security at the time of plaintiff's August 26, 2009 court appearance is likewise insufficient to overcome absolute immunity. This is apparently is a claim that Magistrate Tucker and the other named defendants conspired to violate plaintiff's civil rights by a "show of force" at the courthouse. For two reasons, such a claim is not maintainable as a matter of law.

First, because all of the alleged conspirators are employed by the Town of Ardmore, any conspiracy claim is barred by the intracorporate conspiracy doctrine. See, e.g., <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1190-91 (11th Cir. 2001).[5]

---

[5] Magistrate Tucker would be entitled to absolute judicial immunity from any allegations of conspiracy in any event. The case law is uniform that allegations of a conspiracy between a judge and a third party do not operate to deprive a judge of the defense of absolute judicial immunity. See, e.g., <u>Dykes v. Hosemann</u>, 776 F.2d 942, 946 (11th Cir. 1985) (noting that if judges could be "hauled into court" on "mere allegations of conspiracy or prior agreement," such would defeat the "precise result judicial immunity was designed to avoid."); <u>Harper v. Merckle</u>, 638 F.2d 848, 856 n. 9 (5th Cir. Unit B), cert. denied 454 U.S. 816 (1981) ("[E]ven a judge who is approached as a judge by a party [and conspires with such party] to violate [another

Second, any such claim — along with the claim arising out of Magistrate Tucker's alleged actions in contacting law enforcement in response to plaintiff's behavior in her chambers at Town Hall — would be barred by the doctrine of absolute judicial immunity. A judge acts within her judicial capacity in taking measures to protect herself, and ensure the security of the court and court personnel and the orderly conduct of court business. In Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005) (on rehearing), a criminal defendant "became infuriated by what he thought to be his mistreatment by Vermont judges and prosecutors in the courts of criminal proceedings against him." Huminski, 296 F.3d at 58. The plaintiff "began to include angry denunciations of them in his public communications." Id. The "Vermont judges and court personnel . . . interpreted [plaintiff's] behavior as a potential threat to personal safety, to court property, and to the orderly conduct of court business." Id. As a consequence, trespass warnings were provided to the plaintiff prohibiting his entrance upon courthouse property. The plaintiff sued among other defendants, the state court judges for their alleged involvement in the issuance of the trespass notices. The Second Circuit held that the judges were entitled to absolute judicial immunity from the plaintiff's claims. In so holding, the Court in Huminiski discussed

---

party's federal constitutional rights] is properly immune from a damage suit" brought under section 1983.)

at length whether or not the judges were acting in a judicial capacity in connection with their involvement in the issuance of the trespass notices. The Court stated:

> . . . [Judge] Corsones engaged in a judicial act because the general nature and function of her actions were substantially judicial. . . . There was a nexus between her actions – whether or not her actions were motivated by security and safety concerns – and Huminski's criminal case before her. Huminski's letters, complaints, and protests regarding Corsones stemmed directly and proximately from her decision to vacate his plea agreement in his criminal case over which she presided. And Corsones's actions regarding the decision to issue the trespass notices to Huminski stemmed directly from Huminski's protests. These actions by Corsones "were clearly designed to address . . . [Huminski's] conduct, and directly related to her role in adjudicating the case which engendered [Huminski's] conduct in the first place." . . .
>
> It is immaterial, we think, that Corsones's actions occurred outside of a courtroom inasmuch as they were directed at barring Huminski therefrom. . . . ("It would make little sense, and only promote form over substance, for us to say that a judge's response in redressing threatening conduct which she physically observes (e.g., contempt) is entitled to the cloak of judicial immunity, but her action in redressing a threat arising in reaction to her adjudicatory actions which she is told of by others is not entitled to the same level of immunity."). We thus agree with the Sixth Circuit: "[I]n circumstances in which a judge reasonably perceives a threat to himself or herself arising out of the judge's adjudicatory conduct, the judge's response, be it a letter to a prosecutor or a call to the Marshall's office for security, is a judicial act within the scope of judicial immunity." . . .

Third, Huminski's interactions with Corsones were essentially in her judicial capacity. He dealt with her while she was acting in that capacity when she presided over his criminal case. And Huminski's subsequent letters, complaints, and protests regarding the judge derived from and focused on Corsones's judicial performance in vacating his plea agreement. . . .

Finally, the principles underlying judicial immunity suggest that Corsones's actions should be protected. Exposing her to liability for her part in the decision to issue the trespass notices in response to Huminski's activities, which were in response to her judicial decisions in a case before her, would be inconsistent with the protection of the independence of her decisionmaking. A judge cannot be expected regularly and dispassionately to make decisions adverse to overtly hostile parties if subsequent actions to protect herself, her staff, and those in her courthouse from such hostility may result in the rigors of defending against – and even the possibility of losing – lengthy and costly litigation.

Id. at 78 (citations omitted); see also Barrett v. Harrington, 130 F.3d 246 (6th Cir. 1997) (finding a judge entitled to absolute judicial immunity for actions that included letters she wrote on judicial letterhead as state and federal prosecutors requesting an investigation of the plaintiff, against whom she had previously rendered judgment, after concerns arose for her safety based on the plaintiff's actions).

The same is true here. To the extent that plaintiff's allegations regarding Magistrate Tucker's involvement in the alleged "show of force" at the courthouse which resulted in "high security" directed to the plaintiff — or involving her call to

law enforcement in response to plaintiff's conduct in her chambers — have any basis in fact, Magistrate Tucker clearly would have been acting in her judicial capacity with regard to any involvement in such matters. As in <u>Huminiski</u>, "the general nature and function of [her] actions were substantially judicial." <u>Huminiski</u>, 296 F.3d at 78.[6]

Having established that all of the actions at issue were of a judicial nature, it remains only to examine the second prong of the <u>Stump</u> test — *i.e.*, whether Magistrate Tucker acted in the "clear absence of all jurisdiction," an element that requires "a complete absence of subject matter jurisdiction." See <u>Dykes v. Hosemann</u>, 776 F.2d 942, 947-48 (11th Cir. 1985) (collecting cases). The matters at issue in this case involve plaintiff's misdemeanor prosecution in the Municipal Court for the Town of Ardmore for the offense of carrying a concealed weapon. (Complaint, ¶ 9.15).[7] Municipal courts in Alabama have jurisdiction over misdemeanor criminal offenses. See Ala. Code § 12-14-1.

---

[6] It is not required that Magistrate Tucker actually show that her alleged actions were in fact subjectively motivated by concern regarding a potential threat to personal safety, to the safety of court personnel or to the orderly conduct of court business. It is the nature of the act that controls. See <u>Huminiski</u>, 396 F.3d at 78. ("... [J]udge Corsones engaged in a judicial act because the general nature and function of her actions were substantially judicial. . . . There was a nexus between her actions – *whether or not her actions were motivated by security and safety concerns* – and Huminiski's criminal case before her.") (emphasis supplied).

[7] The offense of carrying a concealed weapon is a misdemeanor under Alabama law. See Ala. Code § 13A-11-50.

Apparently, plaintiff asserts that the municipal judge — though not Magistrate Tucker — lacked subject matter jurisdiction over him because of some alleged defect in the criminal complaint upon which he was being prosecuted for the offense of carrying a concealed weapon. (See Complaint, ¶ 9.54). In so arguing, plaintiff conflates the notion of subject matter jurisdiction with procedural issues regarding defects in the process. The latter only affects jurisdiction over the person and *not* over the subject matter. See City of Dothan v. Holloway, 501 So. 2d 1136, 1139 (Ala. 1986) (noting that a defect in proper completion of Uniform Traffic Ticket and Complaint only affects personal jurisdiction over defendant and does not implicate the court's subject matter jurisdiction); Hanson v. City of Trussville, 539 So. 2d 1082, 1084-1085 (Ala. Crim. App. 1988) (same).

As a consequence, it cannot be contended that Magistrate Tucker is not entitled to absolute judicial immunity because the municipal judge lacked subject matter jurisdiction. It is well established that in determining the availability of judicial immunity, the court must decide the "absence of jurisdiction" question on the basis of whether the judicial officer had jurisdiction over the *subject matter*, not whether there was *personal* jurisdiction over the accused. See Dykes v. Hosemann, 776 F.2d 942 (11th Cir. 1985) (*en banc*), cert. denied, 479 U.S. 983 (1986). In Dykes, the Eleventh Circuit squarely rejected the contention that an alleged lack of personal

16

jurisdiction equates to a lack of subject matter jurisdiction for purposes of analyzing

the entitlement to judicial immunity:

> Withdrawing judicial immunity where a judge has subject matter but not personal jurisdiction over a party affected by his ruling conflicts with all of these policies. . . . In sum, to require a judge to defend a charge that he knowingly entered an order adversely affecting a party over whom the court had not acquired personal jurisdiction would be to ignore the still valid policy considerations articulated by the Supreme Court in Bradley v. Fisher.

776 F.2d at 949-950 (citing <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335, 351(1871).

Accordingly, Magistrate Tucker clearly is entitled to absolute judicial immunity

as to all claims set forth against her in plaintiff's complaint, and no further analysis

is required.

> D.    Alternatively, Magistrate Tucker is Entitled to Qualified Immunity from the Plaintiff's Claims Alleged in the Complaint in this Case

In the alternative, at a minimum, Magistrate Tucker is entitled to qualified

immunity from plaintiff's § 1983 claims in this action.  All of the allegations of

conduct on the part of Magistrate Tucker, even if taken as true, portray normal and

appropriate actions by a magistrate.  As a consequence, the matters alleged in the

complaint do not give rise to a constitutional violation, much less one which was violative of clearly established constitutional rights.[8]

The Supreme Court's decision in <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987), explains what is meant by "clearly established" law necessary to defeat the defense of qualified immunity:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

<u>Anderson</u>, 483 U.S. at 640 (citations omitted). According to the Supreme Court, the impermissible consequence of applying the "clearly established" law test too generally is that "[p]laintiffs would be able to convert the rule of qualified immunity

---

[8] Defendant Tucker is aware that plaintiff is proceeding *pro se* in this action. However, "[a]ll litigants, including those proceeding *pro se*, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe [a *pro se* plaintiff's] pleadings, . . . the court does not have 'license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain a cause of action.' " <u>Coggins v. Tallapoosa County Court</u>, 2008 WL 2568375 (M.D. Ala. Jan. 25, 2008) (Hobbs, J.) (quoting <u>GJR Investments, Inc. V. County of Escambia, Fla.</u>, 132 F. 3d 1359, 1369 (11th Cir. 1998).

18

. . . into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." Id. at 639.

In Hope v. Pelzer, 536 U.S. 730, 741 (2002), the Supreme Court stated that the "salient question" for purposes of determining whether a violation of clearly established law has occurred is "whether the state of the law [at the time of the challenged conduct] gave [the government actor] *fair warning* that [his or her] alleged treatment [of the plaintiff] was unconstitutional." (emphasis added). The Supreme Court has cautioned, however, that the inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). See also Anderson, 483 U.S. at 639-41 (cautioning against identifying constitutional rights at a general level and instead requiring an objective "fact-specific" inquiry based on information possessed by the government actor). Thus, unless a plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under 42 U.S.C. § 1983. See, e.g., Wilson v. Layne, 526 U.S. 603, 604 (1999) (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); Saucier, 533 U.S. at 201-02, 209 (granting

qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . .").  See also Vinyard v. Wilson, 311 F. 3d 1340, 1351-1353 (11th Cir. 2002) (recognizing that, based on the Supreme Court's decision in Hope that unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must show that case law with "a very high degree of prior factual particularity" had previously determined the conduct to be unconstitutional).

There is no case law which has held that the alleged actions on the part of Magistrate Tucker in the complaint in this case constitute a violation of any federal constitutional right.  Because no such case law exists, the allegations of the complaint are insufficient to overcome Magistrate Tucker's assertion of the defense of qualified immunity.

> E.     Plaintiff Has No Maintainable Claim Under the Alabama Constitution of 1901

Throughout his complaint, plaintiff asserts claims under the Alabama Constitution of 1901.  However, it is clear that plaintiff has no maintainable claims under the Alabama Constitution of 1901.  The Alabama Supreme Court has squarely

addressed this issue. In <u>Matthews v. Alabama Agricultural & Mechanical University</u>, 787 So. 2d 691 (Ala. 2000), a plaintiff filed an action against several defendants alleging, in part, that his constitutional rights under the Alabama Constitution had been violated. <u>Matthews</u>, 787 So. 2d at 698: "Matthews also alleges that the University employees violated certain rights he claims are guaranteed to him by the <u>Constitution of Alabama of 1901</u>. For these alleged violations, Matthews seeks both compensatory and punitive damages." The Supreme Court in <u>Matthews</u> squarely held that no such cause of action existed. The Court stated:

> . . . Matthews presented no authority to the trial court, and he has presented no authority to this court, that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901, and we have found none . . . Therefore, the trial court properly entered the summary judgment in favor of the University employees on [the plaintiff's money damage claims for violation of the Alabama Constitution].

<u>Id</u>.

Federal courts in Alabama, construing Alabama law, have reached the same result. See <u>Roberts v. City of Geneva</u>, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) ("Plaintiff seeks compensatory and punitive damages from the city for alleged violations of the Alabama Constitution, but has not cited any authority which provides for a private cause of action for alleged violations. Thus, the court finds that

the city is entitled to summary judgment on plaintiff's claims alleging violations of the Alabama Constitution."); see also <u>Ross v. State of Alabama</u>, 893 F. Supp. 1545, 1555 (M.D. Ala. 1995).  Accordingly, the claims under the <u>Alabama Constitution of 1901</u> must be dismissed for failure to state a claim upon which relief can be granted.

    F.    Plaintiff Has No Maintainable Claim Against Magistrate Tucker for "Violation of Oath of Office," Noncompliance with the Alabama Rules of Criminal Procedure, or Violation of Criminal Statutes

Although plaintiff includes a claim for "violation of oath of office," this does not amount to an actionable tort under Alabama or federal law.  The Eleventh Circuit has specifically held under federal statutes providing that state legislators must take an oath to uphold the Constitution that "oath requirements for certain state officials, do not create a private cause of action."  <u>Chen ex rel. V.D. v. Lester</u>, 2010 WL 339789, at * 5 (11th Cir. Feb. 1, 2010); cf. <u>Bresler v. Dretke</u>, 2006 WL 1867836, at * 2 (N.D. Tex. July 6, 2006) ("Additionally, claims based on an alleged failure to take the oaths of office required by Texas state law do not raise a federal constitutional claim.").  The only foundation plaintiff identifies for any right to expect officials to comply with their oaths of office is the Ninth Amendment to the United States Constitution.  As set forth above, the Ninth Amendment does not confer any

actionable rights. See, e.g., <u>Metz v. McKinley</u>, 583 F. Supp. 683, 688 n.4 (S.D. Ga. 1984).

Further, no claim exists for violation of the Alabama Rules of Criminal Procedure under either state or federal law. See generally <u>Harris v. Birmingham Board of Education</u>, 817 F.2d 1525, 1527 (11th Cir. 1987) (holding that even though a state statutory requirement was violated, such "does not prove a violation of a federal constitutional right."); <u>Padgett v. Mosley</u>, 2007 WL 2409464, at * 8 (M.D. Ala. Aug. 20, 2007) ("[N]ot every violation of state or federal law or state are federally-mandated procedures is a violation of the constitution . . . . [T]hat Defendants may have failed to . . . comply with administrative regulations provides . . . no basis for relief in this complaint. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima.") (citations omitted); see also <u>Smith v. State of Georgia</u>, 684 F.2d 729, 732 n. 6 (11th Cir. 1982) ("[E]ven if DAS departed from its own guidelines, not every violation by state agents of its own rules rises to the level of a due process infringement.").

At other places in his complaint, although not directly asserting cause of actions for such violation, plaintiff asserts Magistrate Tucker acted in violation of certain state criminal statutes. The Alabama Supreme Court has made clear that

"[o]ne claiming a private right of action within a statutory scheme must show *clear evidence* of a legislative intent to impose civil liability for a violation of the statute." American Auto. Ins. Co. v. McDonald, 812 So. 2d 309, 311 (Ala. 2001) (emphasis supplied). The Alabama Supreme Court has further addressed, in general fashion, the availability of a private right of action under state criminal statutes. Clarifying earlier statements, the Court in Martinson v. Cagle, 454 So. 2d 1383 (Ala. 1984), held that although an act that constitutes a crime may also be the basis of a civil action, civil liability will exist "only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted." Id. at 1385. The Court went on to hold that counts of a complaint alleging merely that "criminal acts were committed and that the Martinsons were thereby injured, do not state a cause of action for which relief may be granted." Id.; see also Prill v. Marrone, 23 So. 3d 1, 11 (Ala. 2009) (relying upon Martinson to hold that no private right of action exists under the Alabama criminal conspiracy statutes); Hardesty v. CPRM Corp., 391 F. Supp. 2d 1067, 1071 (M.D. Ala. 2005) (dismissing causes of action based on criminal statutes after finding that, "[l]ike the causes of action based on criminal acts in Martinson, Plaintiffs' Count II alleges only that the Defendants violated a criminal statute and that the Plaintiffs were damaged.").

Plaintiff's claims here are no different than those discussed in <u>Martinson</u>, <u>Prill</u>, and <u>Hardesty</u> — *i.e.*, he alleges a violation of a criminal statute and then sets forth a conclusory statement of damage. Such allegations are not sufficient because no civil cause of action exists.

Conclusion

For the foregoing reasons, the motion to dismiss of Magistrate Tucker is due to be granted.

s/ George W. Royer, Jr.
George W. Royer, Jr.

s/ David J. Canupp
David J. Canupp

LANIER FORD SHAVER & PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
Huntsville, AL 35805
Phone: 256-535-1100
Fax: 256-533-9322
E-mail: gwr@lanierford.com & djc@lanierford.com

Attorneys for Defendant Sandra Tucker

25

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon with the Clerk of the Court using the CM/ECF system and that I have served a copy of the foregoing by depositing a copy of the same in the United States mail, postage prepaid and properly addressed to:

      Arthur Hirsch
      3121 Buffalo Road
      Lawrenceburg, TN  38464

on this the 12th day of March, 2010.

              s/ George W. Royer, Jr.
              George W. Royer, Jr.